| | |
|---|---|
| 2ND JUDICIAL DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: April 3, 2024 1:48 PM<br>FILING ID: 12207C19B9209<br>CASE NUMBER: 2024CV31006 |
| **PLAINTIFF:** TREY MCMURRY, Individually and for Others Similarly Situated<br><br>**v.**<br><br>**DEFENDANT:** OLAMETER CORPORATION | ☐  COURT USE ONLY  ☐ |
| Attorneys for Plaintiff:<br><br>Brian D. Gonzales, Atty. Reg. # 29775<br>**BRIAN D. GONZALES, PLLC**<br>2580 East Harmony Road, Suite 201<br>Fort Collins, Colorado 80528<br>Phone: (970) 214-0562<br>BGonzales@ColoradoWageLaw.com<br><br>Michael A. Josephson*<br>Andrew W. Dunlap*<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: (713) 352-1100<br>Fax:      (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch*<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: (713) 877-8788<br>Fax:      (713) 877-8065<br>rburch@brucknerburch.com<br><br>*Pro hac vice applications forthcoming* | Case Number:<br><br><br>Ctrm/Div: |
| **ORIGINAL CLASS ACTION COMPLAINT & JURY DEMAND** | |

## SUMMARY

1.      Trey McMurry ("McMurry") brings this class action to recover unpaid wages and other damages from Olameter Corporation (Olameter).

2.      Olameter employed McMurry as one of its Piece Rate Workers (defined below) primarily in the city and county of Denver, Colorado.

3.      McMurry and the other Piece Rate Workers regularly worked more than 40 hours in a workweek and/or more than 12 hours in a workday.

4.      Olameter violated the Colorado Minimum Wage Act (CMWA), the Colorado Wage Claim Act (CWCA), and their implementing regulations, the Colorado Overtime and Minimum Pay Standards Orders (COMPS Orders), and the Revised Municipal Code of the City and County of Denver, Colorado (DRMC) in at least three ways:

    a.  Failing to properly calculate the overtime rate of pay for any hours worked over 40 hours in a workweek and/or 12 hours in a day;

    b.  Failing to provide uninterrupted meal and rest breaks; and

    c.  Failing to pay for any work performed prior to when the employee clocks in or after the employee clocks out.

5.      All the while, Olameter paid McMurry and its other Piece Rate Workers on a piece rate basis, paying them a set amount for each utility they located and marked.

6.      Olameter changed its method of pay to hourly and overtime in 2023.

7.      Since the pay method change, Olameter calculates the overtime rate at 1.5 times the base rate of pay.

8.      As Olameter is well aware, it was obligated to pay overtime at 1.5 times the regular rate of pay to McMurry and the Piece Rate Workers based on a calculation of all piece rate pay divided by 40 hours per workweek because there was no "clear mutual understanding" that the piece rate pay served as compensation for all hours worked. *See* 7 C.C.R. 1103-1 (1.8.2).

## JURISDICTION & VENUE

9.      This Court has subject matter jurisdiction pursuant to COLO. CONST. ART. VI § 9(1) because this case arises under Colorado law, and Olameter's violative conduct occurred in Colorado.

10.     This Court has specific personal jurisdiction over Olameter based on Olameter's substantial operations in Colorado and its substantial contacts with, and conduct directed toward, Colorado that form the basis of this class action. C.R.S. § 13-1-124.

11.     Specifically, Olameter employed McMurry and the other Piece Rate Workers in Colorado and failed to provide required rest breaks and meal breaks and pay them earned wages, minimum wages, and proper overtime wages for their work performed in Colorado.

12.     Venue is proper pursuant to C.R.C.P. 98(c) because Olameter can be found in Denver County, and a substantial part of the events or omissions giving rise to this action occurred in Denver County.

13.     Specifically, Olameter maintains an office in Denver, Colorado, and McMurry primarily worked for Olameter in Denver County.

14.     Finally, this matter is properly in this Court because: (1) the aggregate amount in controversy is under $5 million; (2) the size of McMurry proposed class is fewer than 100 individual members; (3) McMurry's proposed class includes only Colorado citizens; (4) McMurry's and the other Piece Rate Workers' claims arise under Colorado law, rather than any federal statute; and (5) there is no embedded federal question or issue in McMurry's and the other Piece Rate Workers' claims arising solely under Colorado law.

## PARTIES

15.     McMurry is an adult individual residing in Westminster, Adams County, Colorado.

16.     McMurry worked for Olameter as a Utility Locator primarily in Denver County, but also in Arapahoe, Adams, Douglas, and Jefferson Counties, Colorado from approximately December 2022 until April 2023.

17.     At all relevant times, McMurry and the Piece Rate Workers were Olameter's covered "employees" within the meaning of the CWCA, CMWA, COMPS Orders, and DRMC. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5); D.R.M.C., Chapter 58, Art. II, Div. 1, Sec. 58-1(11).

18.     Throughout McMurry's employment, Olameter classified McMurry as non-exempt from overtime and paid him through its "piece rate pay scheme."

19.     The piece rate pay scheme resulted in an undercalculation of the overtime wages McMurry earned.

20.     Further, Olameter subjected McMurry to its uniform, illegal "ticket to ticket" policy, prohibiting him from clocking in for his shifts until he arrived at his first assigned ticket and requiring him to clock out of his shifts when he left his last assigned ticket.

21.     But throughout his employment, Olameter required McMurry to perform compensable work "off the clock" before arriving to his first assigned ticket and after leaving his last assigned ticket. This time was not considered for the purposes of determining the correct amount of overtime hours worked.

22.     Further, throughout his employment, Olameter subjected McMurry to its uniform, illegal meal break policy, neither authorizing nor permitting McMurry to take a *bona fide* meal break.

23.     Throughout his employment, McMurry has not actually received *bona fide* meal breaks (or minimum wage and overtime pay for his missed meal breaks) on a consistent basis.

24.     Nor has McMurry received *bona fide* 10-minute rest breaks throughout his employment (or minimum wage and overtime pay for his missed rest breaks) on a consistent basis.

25.    The Piece Rate Workers were likewise subject to these illegal pay policies.

26.    Thus, Olameter uniformly deprived McMurry and the other Piece Rate Workers of overtime pay at the proper premium rate for all hours worked over 40 in a workweek and 12 in a workday, including those worked "off the clock," in violation of the CWCA, CMWA, COMPS Orders, and DRMC.

27.    Likewise, Olameter uniformly deprives the Piece Rate Workers of earned wages for all hours worked, including those worked "off the clock," in violation of the CWCA, CMWA, COMPS Orders, and DRMC.

28.    Olameter uniformly deprived the Piece Rate Workers of *bona fide* meal and rest breaks and minimum and overtime wages for missed meal and rest breaks in violation of the CWCA, CMWA, COMPS Orders, and DRMC.

29.    The Colorado Class of similarly situated employees is defined as:

**All employees who worked for Olameter and were paid according to its piece rate pay scheme at any time during the past 6 years through final resolution of this action ("Piece Rate Workers").**

30.    The Denver Class of similarly situated employees is defined as:

**All employees who worked for Olameter and were paid according to its piece rate pay scheme, while working in Denver County and/or performing work covered by D.R.M.C. Chapter 58, at any time during the past 3 years through final resolution of this action ("Denver Class").**

31.    The Colorado Class Members and the Denver Class members are collectively referred to as the "Piece Rate Workers."

32.    The Piece Rate Workers can be readily ascertained from Olameter's business and personnel records.

33.    Olameter Corporation is a Michigan corporation headquartered in Waukesha, WI.

34.    Olameter is registered to do business in Colorado.

35.    Indeed, Olameter maintains an office in Denver, Colorado and employs employees acting in its interests in the city and county of Denver, Colorado, as well as throughout Colorado.

36.    At all relevant times, Olameter transacted and conducted substantial business in Colorado and specifically in Denver, Colorado.

37.    At all relevant times, Olameter was subject to the CWCA, CMWA, COMPS Orders, and DRMC because Olameter was (and is) an "employer" within the meaning of the CWCA, CMWA,

COMPS Orders, and DRMC. *See* C.R.S. § 8-4-101(6); C.C.R. 1103-1(1.6); D.R.M.C., Chapter 58, Art. II, Div. 1, Sec. 58-1(6).

38.     Olameter may be served through its registered agent: **Corporation Service Company, 1900 W Littleton Boulevard, Littleton, Colorado 80120**.

FACTS

39.     "Olameter provides underground locating services for the buried assets of gas, electric, fiber-optic, water and sewer utilities, and communications companies, as well as property managers in many regions of the United States and Canada," including Colorado.[1] Olameter bills itself as a utility "locating contractor" that "understand[s] the importance of having a locate done properly."[2]

40.     To meet its business objectives, Olameter hired utility locators (including McMurry and the other Piece Rate Workers) to provide underground utility locating services to its clients in Colorado, including in Denver, Colorado.

41.     Olameter uniformly classified McMurry and its other Piece Rate Workers as nonexempt from overtime and paid them on a piece rate basis.

42.     McMurry and the other Piece Rate Workers regularly worked more than 40 hours a workweek and 12 hours a workday.

43.     While exact job duties and precise locations may differ, McMurry and the other Piece Rate Workers are subject to Olameter's same or similar illegal policies – Olameter's "piece rate pay scheme," "meal break," "rest break," and "ticket to ticket," policies – for similar work.

44.     For example, McMurry worked for Olameter as a Utility Locator primarily in Denver, Colorado from approximately December 2022 until April 2023.

45.     McMurry was Olameter's nonexempt employee.

46.     As a Utility Locator, McMurry's primary responsibilities included driving to locations designated by Olameter in an Olameter-owned vehicle, locating underground network lines for gas, electric, fiber-optic, water and sewer utilities, and communications companies (Olameter's clients) and identifying whether Olameter's clients' underground utilities conflicted with proposed excavation locations.

47.     Throughout his employment, Olameter required McMurry to record his hours worked through its uniform timekeeping and ticketing system.

48.     In addition, Olameter utilized a GPS tracking system to track the company truck McMurry drove.

---

[1] https://www.olameter.com/service/asset-management/underground-locating/(last visited March 21, 2024).
[2] *Id.*

5

49.    Olameter uniformly pressured and expected McMurry to complete as many tickets as possible.

50.    Throughout his employment, McMurry regularly worked more than 40 hours a workweek and/or 12 hours a workday.

51.    Olameter's records show that McMurry, regularly worked more than 40 hours a workweek and/or more than 12 hours in a workday.

52.    Indeed, McMurry typically worked at least 50 to 60 hours a week.

53.    But Olameter paid McMurry under its illegal "piece rate pay scheme," which did not compensate McMurry at the proper overtime premium rate for hours worked over 40 in a workweek and over 12 in a workday.

54.    This resulted in Olameter underpaying overtime wages to McMurry for each hour he worked over 40 in a workweek and/or over 12 in a workday.

55.    Further, Olameter's piece rate pay scheme provided no compensation for required "meal breaks" and "rest breaks" that Olameter failed to authorize and permit McMurry to take.

56.    Throughout his employment, Olameter also subjected McMurry to its illegal "ticket to ticket" policy.

57.    Specifically, Olameter prohibited McMurry from clocking in for his shifts until he arrived at his first assigned ticket and required him to clock out when he left his last assigned ticket.

58.    As can be seen in the text message to McMurry below, Senior HR and Payroll Administrative Assistant, Rhonda Stroud, and other Olameter management made clear that McMurry and the other Piece Rate Workers are not permitted to clock in before arriving at their first ticket of the day.



59.     But Olameter required McMurry to perform compensable work "off the clock" before arriving to his first assigned ticket and after leaving his last assigned ticket.

60.     As can be seen in the text message to McMurry below, Olameter management required McMurry to unload his "receiver, transmitter, and tablet" from his vehicle each night (and reload them into his vehicle each morning), as well as unload three cans of each color of paint from his vehicle each night (and reload them into his vehicle each morning).



61.     Moreover, to meet Olameter's strict productivity requirements, before arriving at his first ticket, McMurry was forced to review his tickets for the day, route plan his drive between his

tickets, inspect his company vehicle, make and take calls from Olameter's clients and his supervisors during his drive, load his utility locating equipment into his company vehicle, and drive to his first assigned ticket all "off the clock."

62.     After clocking out upon completing his last assigned ticket, McMurry was forced to drive home, make and take calls from Olameter's clients and his supervisors during his drive, unload his utility locating equipment from his company-issued vehicle, charge his utility locating equipment at home, review tickets for the next day, and route plan his drive between his tickets "off the clock."

63.     This pre- and post-ticket "off the clock" work took McMurry approximately 2 to 3 hours a day (or 10 to 18 hours a week) resulting in an undercounting of the number of hours McMurry worked each week.

64.     Olameter also subjected McMurry to its illegal meal break policy.

65.     Specifically, Olameter did not authorize or permit *bona fide* 30-minute meal breaks, as required by Colorado wage laws. *See* 7 C.C.R. 1103-1 (5.1).

66.     McMurry did not actually receive *bona fide* uninterrupted meal breaks.

67.     Instead, to meet Olameter's strict productivity requirements, McMurry was forced to perform his regular utility locating duties, including answering and making phone calls, driving, and performing locates and marking underground utility lines without a *bona fide* meal break.

68.     Because of these constant work-related tasks, McMurry was not free to engage in personal activities during required "meal breaks."

69.     Olameter failed to pay McMurry minimum and/or overtime wages for his missed meal breaks.

70.     Similarly, because of Olameter's strict productivity requirements, Olameter did not authorize or permit McMurry to take *bona fide* 10-minute rest periods for every 4 hours or major fraction thereof, he worked. *See* 7 C.C.R. 1103-1 (5.2).

71.     Olameter failed to pay McMurry minimum and/or overtime wages for his missed rest breaks.

72.     This unpaid "off the clock" work is compensable under Colorado law because Olameter knew, or should have known, that: (1) McMurry was performing unpaid work during his "meal breaks" and "rest breaks"; (2) he was interrupted or subject to interruptions with work duties during any attempted "meal break" and "rest break"; (3) he was not completely relieved of all duties during his "meal breaks" and "rest breaks"; (4) he entirely skipped "meal breaks" and "rest breaks" due to work demands; (5) his "meal breaks" were less than 30 consecutive minutes and his "rest breaks" were less than 10 minutes; (6) he was not free to engage in personal activities during his "meal breaks" and "rest breaks" because of constant work interruptions; and/or (7) he spent his unpaid "meal breaks" and rest breaks performing their regular utility locating duties for Olameter's benefit.

73.     Like McMurry, the other Piece Rate Workers typically worked at least 50 to 60 hours a week.

74.     Olameter uniformly subjected its other Piece Rate Workers to the same policies, procedures, and strict operational and productivity requirements that it imposed on McMurry.

75.     Indeed, Olameter uniformly required the other Piece Rate Workers to complete their work tickets in a timely manner in accordance with Olameter's strict productivity policy.

76.     Olameter uniformly pressured and expected the other Piece Rate Workers to complete as many tickets as possible.

77.     And Olameter closely supervised and tracked the other Piece Rate Workers' productivity to ensure they complied with Olameter's uniform expectations.

78.     In fact, because labor costs are Olameter's greatest expense, Olameter closely monitored the hours the other Piece Rate Workers worked, through its uniform ticketing system and timekeeping system and through GPS tracking of company vehicles.

79.     Olameter prohibited its other Piece Rate Workers from clocking in for their shifts until they arrived at their first assigned ticket and required them to clock out when they leave their last assigned ticket.

80.     But, like McMurry, Olameter also required its other Piece Rate Workers to perform compensable work "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket under Olamater's "ticket to ticket" policy.

81.     Specifically, before clocking in for their shifts, the other Piece Rate Workers (like McMurry) were forced to review tickets for the upcoming day, route plan between tickets, make and take call from Olameter's clients and management during their drives, load their utility locating equipment into their company-issued vehicle, and drive to their first assigned ticket "off the clock" to meet Olameter's strict productivity requirements.

82.     Likewise, after clocking out for their shifts, the other Piece Rate Workers (like McMurry) are forced to drive home, perform truck audits on their company-issued vehicle, unload their utility locating equipment from their company-issued vehicle, charge their utility locating equipment while at home, review tickets for the next day, route plan their drive between tickets, and make and take call from Olameter's clients and management to meet Olameter's strict productivity requirements.

83.     And like McMurry, the other Piece Rate Workers spent approximately 2 to 3 hours a day (or 10 to 18 hours a week) performing this compensable pre- and post-ticket "off the clock" work.

84.     Olameter controlled the other Piece Rate Workers' pre- and post-ticket "off the clock" work, and such work was undertaken primarily for the benefit of Olameter's business to provide utility locating services to its clients.

85.     Further, this mandatory pre- and post-ticket "off the clock" work was necessary to the principal work McMurry and the other Piece Rate Workers perform in locating utilities.

86.    Indeed, like McMurry, the other Piece Rate Workers could not provide utility locating services to Olameter's clients in accordance with Olameter's strict productivity requirements unless they performed this pre- and post-ticket "off the clock" work.

87.    In other words, McMurry's and the other Piece Rate Workers' mandatory pre- and post-ticket "off the clock" work is a fundamental requirement of their jobs duties.

88.    Indeed, Olameter could not eliminate this pre- and post-ticket "off the clock" work altogether without impairing McMurry's and the other Piece Rate Workers' ability to perform their utility locating work for Olameter.

89.    Rather, this mandatory pre- and post-ticket "off the clock" work was integral and indispensable to McMurry's and the other Piece Rate Workers' work as Olameter utility locators.

90.    Thus, McMurry and the other Piece Rate Workers routinely performed this mandatory pre- and post-ticket "off the clock" work for Olameter's—not their own—benefit.

91.    And Olameter knows McMurry and its other Piece Rate Workers perform this compensable pre- and post-ticket work "off the clock" because Olameter required them to do so.

92.    Olameter's management received complaints from its Piece Rate Workers that they could not complete their assigned work tickets each workweek, as Olameter required, without working "off the clock."

93.    But Olameter failed to exercise its duty as McMurry's and the other Piece Rate Workers' employer to ensure these employees are not performing work that Olameter does not want performed "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

94.    Thus, Olameter requested, suffered, permitted, or allowed McMurry and its other Piece Rate Workers to work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

95.    Under Olameter's illegal "ticket to ticket" policy, McMurry and the other Piece Rate Workers were denied overtime pay for the time they spent performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket in willful violation of the CWCA, CMWA, COMPS Orders, and DRMC.

96.    And under Olameter's illegal "ticket to ticket" policy, McMurry and the other Piece Rate Workers were denied earned wages for the time they spend performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket in willful violation of the CWCA, CMWA, and COMPS Orders.

97.    Olameter likewise also paid the other Piece Rate Workers under its illegal "piece rate pay scheme," which did not compensate them at the proper overtime premium rate for hours worked over 40 in a workweek and over 12 in a workday.

98.    This resulted in Olameter underpaying overtime wages to the other Piece Rate Workers for each hour they worked over 40 in a workweek and/or over 12 in a workday.

99.     Under Olameter's illegal "piece rate pay scheme," McMurry and the other Piece Rate Workers were denied overtime pay at the proper rate for each hour they worked over 40 in a workweek and/or over 12 in a workday in willful violation of the CWCA, CMWA, COMPS Orders, and DRMC.

100.    And under Olameter's illegal "piece rate pay scheme," McMurry and the other Piece Rate Workers are denied their full amount of earned overtime wages in willful violation of the CWCA, CMWA, and COMPS Orders.

101.    Additionally, like McMurry, Olameter subjected its other Piece Rate Workers to its illegal meal break policy.

102.    Like McMurry, Olameter did not authorize or permit the other Piece Rate Workers to take *bona fide* 30-minute meal breaks, as required, for shifts exceeding five hours.

103.    Instead, to complete their assigned heavy workloads in accordance with Olameter's uniform, strict operational and productivity requirements (and Olameter's close monitoring of the same), McMurry and the other Piece Rate Workers were routinely forced to perform their regular utility locating duties and responsibilities during their unpaid "meal breaks."

104.    Specifically, during their unpaid "meal breaks," McMurry and other Piece Rate Workers regularly performed work-related tasks, such as completing tickets, driving from one ticket to another, taking/making calls to supervisors and Olameter's clients, and route planning.

105.    The "off the clock" work McMurry and the other Piece Rate Workers performed during their "meal breaks" was similar if not the same.

106.    Because of these constant work-related tasks, McMurry and the other Piece Rate Workers are not free to engage in personal activities during required "meal breaks."

107.    Olameter failed to pay McMurry minimum and overtime wages for his missed meal breaks.

108.    Similarly, to meet Olameter's strict productivity requirements, Olameter did not authorize or permit the other Piece Rate Workers to take *bona fide* 10-minute rest periods for every 4 hours or major fraction thereof, they worked, as required.

109.    Olameter failed to pay the other Piece Rate Workers minimum and overtime wages for their missed rest breaks.

110.    This unpaid "off the clock" work is compensable under Colorado law because Olameter knew, or should have known, that: (1) the Piece Rate Workers were performing unpaid work during their "off the clock" meal breaks and during their "rest breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted "meal break" and "rest break"; (3) they were not completely relieved of all duties during their "meal breaks" and "rest breaks"; (4) they entirely skipped their "meal breaks" and "rest breaks" due to work demands; (5) their "meal breaks" were less than 30 consecutive minutes; (6) they were not free to engage in personal activities during their meal break because of constant work interruptions; and/or (7) they spent their unpaid meal breaks performing their regular utility locating duties for Olameter's benefit.

11

111. Thus, the other Piece Rate Workers routinely spend their "meal breaks" and "rest breaks" on-duty and performing work "off the clock" for Olameter's benefit.

112. Olameter failed to exercise its duty as the other Piece Rate Workers' employer to ensure these employees are not performing work that Olameter does not want performed "off the clock" during their "meal breaks" and "rest breaks."

113. And Olameter knew McMurry and the other Piece Rate Workers regularly worked "off the clock" during their unpaid "meal breaks" and "rest breaks."

114. Specifically, using timecard details and GPS data tracked by Olameter's uniform ticketing system, Olameter can easily determine whether McMurry and the other Piece Rate Workers worked "off the clock" during their unpaid "meal breaks" and during their "rest breaks."

115. In fact, Olameter's management level employees can easily determine if McMurry and the other Piece Rate Workers are clocked out for lunch and/or if their vehicles are moving (and, therefore, they are performing work duties, including traveling between jobsites).

116. Despite accepting the benefits, Olameter does not pay McMurry and its other Piece Rate Workers for the compensable work they perform "off the clock" during their unpaid "meal breaks" and during their "rest breaks."

117. Thus, under Olameter's illegal "meal break" and "rest break" policies, McMurry and the other Piece Rate Workers were denied wages and overtime wages for their denied "meal breaks" in willful violation of the CWCA, CMWA, COMPS Orders, and DRMC.

118. And under Olameter's illegal "meal break" and "rest break" policies, McMurry and the other Piece Rate Workers are denied earned wages for the time they spend performing compensable work "off the clock" during their on-duty "meal breaks" and during their "rest breaks" in willful violation of the CWCA, CMWA, and COMPS Orders.

## CLASS ACTION ALLEGATIONS

119. McMurry incorporates all other paragraphs by reference.

120. McMurry brings his claims as a class action on behalf of himself and the other Piece Rate Workers pursuant to C.R.C.P. 23.

121. Like McMurry, the other Piece Rate Workers were victimized by Olameter's illegal "rest break," "meal break," "ticket to ticket" policies, and "piece rate pay scheme."

122. Other Piece Rate Workers worked with McMurry and indicated they were paid in the same manner, performed similar work, and were subject to Olameter's same illegal "rest break," "meal break," "ticket to ticket" policies, and "piece rate pay scheme."

123. Based on his experience with Olameter, McMurry is aware Olameter's illegal "rest break," "meal break," "ticket to ticket" policies, and "piece rate pay scheme" were imposed on the other Piece Rate Workers.

124.    The putative classes of Piece Rate Workers include more than 50 members.

125.    Thus, the Piece Rate Workers are so numerous that the joining of all potential class members in one lawsuit is impracticable.

126.    The Piece Rate Workers are similarly situated in the most relevant respects.

127.    Even if their specific job titles or precise locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages for all hours worked and overtime pay for all hours worked over 40 in a workweek or 12 in a workday.

128.    Therefore, the specific job titles or precise job locations of the various Piece Rate Workers do not prevent class treatment.

129.    Rather, the Piece Rate Workers are held together by Olameter's uniform, illegal "rest break," "meal break," "ticket to ticket" policies, and "piece rate pay scheme," which systematically deprived McMurry and the other Piece Rate Workers of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek and 12 in a workday.

130.    Olameter's failure to pay earned wages and overtime wages as required by Colorado and Denver wage laws resulted from generally applicable, systematic policies and practices that are not dependent on the personal circumstances of the Piece Rate Workers.

131.    Olameter's records reflect the number of hours the Piece Rate Workers recorded they worked each workweek.

132.    Olameter's records also show the number of hours the Piece Rate Workers actually worked each workweek.

133.    The back wages owed to McMurry and the other Piece Rate Workers can therefore be calculated using the same formula applied to the same records.

134.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Olameter's records, and there is no detraction from the common nucleus of liability facts.

135.    Therefore, the issue of damages does not preclude class treatment.

136.    McMurry's experiences are typical of the experiences of the other Piece Rate Workers.

137.    McMurry has no interest contrary to, or in conflict with, the other Piece Rate Workers.

138.    Like each Piece Rate Worker, McMurry has an interest in obtaining the unpaid wages owed to them under Colorado law.

139.    McMurry and his counsel will fairly and adequately protect the interests of the other Piece Rate Workers.

140.    McMurry retained counsel with significant experience in complex class action litigation.

141.    A class action is superior to other available means for fair and efficient adjudication of this lawsuit.

142.    Absent this class action, many Piece Rate Workers likely will not obtain redress for their injuries, and Olameter will reap the unjust benefits of violating Colorado wage laws.

143.    Further, even if some of the Piece Rate Workers could afford individual litigation against Olameter, it would be unduly burdensome to the judicial system.

144.    Indeed, the multiplicity of actions would create a hardship for the Piece Rate Workers, the Court, and Olameter.

145.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Piece Rate Workers' claims.

146.    The questions of law and fact that are common to each Piece Rate Worker predominate over any questions affecting solely the individual members.

147.    Among the common questions of law and fact are:

a.    Whether Olameter knew, or had reason to know, the Piece Rate Workers were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal breaks" and/or before they arrive at their first assigned ticket and/or after they leave their last assigned ticket;

b.    Whether Olameter engaged in a policy and practice of prohibiting its Piece Rate Workers from clocking in for their shifts until they arrived at their first assigned ticket;

c.    Whether Olameter engaged in a policy and practice of requiring its Piece Rate Workers to clock out for their shifts once they left their last assigned ticket;

d.    Whether Olameter engaged in a policy and practice of requiring its Piece Rate Workers to clock out for 30 minutes for "meal breaks," regardless of whether they actually received a *bona fide*, uninterrupted meal break;

e.    Whether Olameter's meal break policy deprived the Piece Rate Workers of earned wages for all hours worked in violation of the CWCA, CMWA, COMPS Orders, and DRMC;

f.    Whether Olameter's meal break policy deprived the Piece Rate Workers of overtime pay for all overtime hours worked in violation of the CWCA, CMWA, COMPS Orders, DRMC;

g.   Whether Olameter's "ticket to ticket" policy deprived the Piece Rate Workers of overtime pay for all overtime hours worked in violation of the CWCA, CMWA, COMPS Orders, and DRMC;

h.   Whether Olameter's "piece rate pay scheme" deprived the Piece Rate Workers of earned wages for on duty, missed, and interrupted meal breaks and rest breaks in violation of the CWCA, CMWA, COMPS Orders, and DRMC;

i.   Whether Olameter's "piece rate pay scheme" deprived the Piece Rate Workers of overtime pay at the proper rate in violation of the CWCA, CMWA, COMPS Orders, and DRMC;

j.   Whether Olameter's decision to not pay the Piece Rate Workers all their earned wages for all hours worked, including those worked "off the clock," was made in good faith;

k.   Whether Olameter's decision not to pay the Piece Rate Workers overtime wages for all overtime hours worked, including those worked "off the clock," was made in good faith;

l.   Whether Olameter's decision not to pay the Piece Rate Workers overtime wages at the proper premium rate was made in good faith; and

m.   Whether Olameter's violations were willful.

148.   McMurry knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

149.   As part of its regular business practices, Olameter intentionally, willfully, and repeatedly violated Colorado and Denver wage laws with respect to McMurry and the other Piece Rate Workers.

150.   Olameter's illegal "rest break," "meal break," "ticket to ticket" policies, and "piece rate pay scheme" deprived McMurry and the other Piece Rate Workers of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek and 12 in a workday, which they are owed under Colorado law.

151.   Accordingly, all of C.R.C.P. 23's requirements are satisfied, and McMurry's proposed classes of Piece Rate Workers merit certification.

## OLAMETER'S VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF COLORADO WAGE LAWS

152.   McMurry incorporates all other paragraphs by reference.

153.    Olameter knew it was subject to the CWCA's, CMWA's, COMPS Orders, and DRMC's respective provisions. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1(1.6); D.R.M.C., Chapter 58, Art. I, Div. 1, Sec. 58-1(6).

154.    Olameter knew McMurry and the other Piece Rate Workers were its non-exempt employees entitled to overtime pay. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5); 7 C.C.R. 1103-1(4.1.1); D.R.M.C., Chapter 58, Art. I, Div. 1, Sec. 58-1(11).

155.    Olameter knew the CWCA, CMWA, COMPS Orders, and DRMC's required it to pay non-exempt employees, including McMurry and the other Piece Rate Workers, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 12 in a workday and 40 in a workweek. *See* 7 C.C.R. 1103-1(4.1.1); D.R.M.C., Chapter 58, Art. I, Div. 2, Secs. 58-23.

156.    Olameter knew the CWCA, CMWA, and COMPS Orders further required it to pay employees, including McMurry and the other Piece Rate Workers, all wages earned for all hours of work performed. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

157.    Olameter knew it paid McMurry and the other Piece Rate Workers on a piece rate basis but improperly calculated their regular rate. *See* 7 C.C.R. 1103-1 (1.8.2).

158.    Olameter knew McMurry and the other Piece Rate Workers worked over 40 hours in at least one workweek and/or over 12 hours in one workday during the 3 years before this Complaint was filed because Olameter required them to record their hours worked using its timekeeping and ticketing system and through the GPS monitors recording the Piece Rate Workers' vehicles' movements.

159.    Olameter knew the CWCA, CMWA, COMPS Orders, and DRMC required it to pay employees, including McMurry and the other Piece Rate Workers, for all hours these employees performed compensable work. *See* 7 CCR 1103-1 (3.1).

160.    Olameter knew that, as McMurry's and the other Piece Rate Workers' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that Olameter did not want performed. *See* 7 CCR 1103-1 (1.9).

161.    Olameter knew it did not authorize and permit McMurry and the other Piece Rate Workers to take *bona fide* rest breaks for every four hours worked or major fraction thereof. *See* 7 CCR 1103-1 (5.2).

162.    Olameter knew McMurry and the other Piece Rate Workers regularly spent their "rest breaks" on-duty and performing their regular utility locating duties for Olameter's benefit.

163.    Olameter knew it did not provide McMurry and the other Piece Rate Workers additional compensation for their on-duty "rest breaks." *See* 7 CCR 1103-1 (5.2.4).

164.    Olameter knew it did not authorize and permit McMurry and the other Piece Rate Workers to take *bona fide* meal breaks for shifts exceeding five hours. *See* 7 CCR 1103-1 (5.1).

165.    Olameter knew McMurry and the other Piece Rate Workers regularly spent their "meal breaks" on-duty and performing their regular utility locating duties for Olameter's benefit.

166.    Olameter knew it prohibited McMurry and the other Piece Rate Workers from clocking in for their shifts until they arrived at their first assigned ticket.

167.    Nonetheless, Olameter knew McMurry and the other Piece Rate Workers performed compensable work "off the clock" before they arrived at their first assigned ticket.

168.    Likewise, Olameter knew it required McMurry and the other Piece Rate Workers to clock out for their shifts when they left their last assigned ticket.

169.    Nonetheless, Olameter knew McMurry and the other Piece Rate Workers performed compensable work "off the clock" after they left their last assigned ticket.

170.    Olameter knew it controlled McMurry's and the other Piece Rate Workers' pre- and post-ticket "off the clock" work. *See* 7 CCR 1103-1 (1.9).

171.    Olameter knew McMurry's and the other Piece Rate Workers' pre- and post-ticket "off the clock" work was undertaken for Olameter's benefit. *See Id.*

172.    Olameter knew McMurry's and the other Piece Rate Workers' pre- and post-ticket "off the clock" work was necessary to the principal work these employees performed as Olameter Utility Locators. *See Id.*

173.    Olameter knew McMurry's and the other Piece Rate Workers' Locators' pre- and post-ticket "off the clock" work was integral and indispensable to these employees' work as Olameter Utility Locators. *See Id.*

174.    Thus, Olameter knew it requested, suffered, permitted, or allowed McMurry and the other Piece Rate Workers to work "off the clock" during their "meal breaks," "rest breaks," and/or before they arrived at their first assigned ticket and after they left their last assigned ticket. *See Id*; 7 CCR 1103-1 (5).

175.    Nonetheless, Olameter did not pay McMurry and the other Piece Rate Workers for the compensable hours and overtime hours they worked "off the clock" during their "meal breaks," "rest breaks," and/or before they arrived at their first assigned ticket and after they left their last assigned ticket.

176.    McMurry and the other Piece Rate Workers complained to Olameter about being required to work "off the clock."

177.    As a result of the foregoing conduct, as alleged, Olameter failed to pay wages due thereby violating, and continuing to violate, the CWCA, COMPS Orders, CMWA, and DRMC. These violations were committed knowingly, willfully, and with reckless disregard of applicable law. *See* C.R.S. § 8-4-109(3)(b)–(c); 7 CCR 1103-1 (8.2).

<u>C</u>OUNT <u>I</u>

FAILURE TO PAY OVERTIME WAGES UNDER THE CWCA AND COMPS ORDERS
(COLORADO CLASS)

178.    McMurry incorporates all other paragraphs by reference.

179.    McMurry brings his CWCA overtime claim on behalf of himself and the other Piece Rate Workers pursuant to C.R.C.P. 23.

180.    Olameter's conduct violated the CWCA, as implemented by the COMPS Orders. *See* C.R.S. §§ 8-4-101, *et seq.*; 7 C.C.R. 1103-1.

181.    At all relevant times, Olameter was subject to the CWCA and the COMPS Orders because Olameter was (and is) an "employer" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1(1.6).

182.    At all relevant times, Olameter employed McMurry and the other Piece Rate Workers as its covered "employees" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5).

183.    The COMPS Orders require employers, like Olameter, to pay non-exempt employees, including McMurry and the other Piece Rate Workers, overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration – for all hours worked over 12 in a workday and 40 in a workweek. *See* 7 C.C.R. 1103-1(4.1.1).

184.    McMurry and the other Piece Rate Workers are entitled to overtime pay under the COMPS Orders. *See* 7 C.C.R. 1103-1(4.1.1).

185.    Olameter violated the CWCA and COMPS Orders by failing to pay McMurry and the other Piece Rate Workers overtime wages at rates not less than 1.5 times their regular rates of pay – based on all remuneration received – for all hours worked over 12 in a workday and 40 in a workweek, including hours worked "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket and for denied "meal breaks" and "rest breaks," which Olameter failed to compensate McMurry and the other Piece Rate Workers *at all* for these missed breaks. *See* 7 C.C.R. 1103-1(4.1.1, 1.8.2, and 5).

186.    Further, Olameter was obligated to pay overtime to McMurry and the Piece Rate Workers based on a calculation of all straight time pay divided by 40 hours per workweek because there was no "clear mutual understanding" that the straight time pay served as compensation for all hours worked, including hours worked "off the clock." *See* 7 C.C.R. 1103-1 (1.8.2).

187.    Olameter failed to utilize the correct regular rate calculation, which resulted in an underpayment of overtime pay to McMurry and the other Piece Rate Workers.

188.    Olameter's unlawful conduct harmed McMurry and the other Piece Rate Workers by depriving them of the proper premium overtime wages they are owed.

189.    Accordingly, McMurry and the other Piece Rate Workers are entitled to recover their unpaid overtime wages and an automatic penalty of the greater of two times the amount of the unpaid overtime wages or $1,000. *See* C.R.S. § 8-4-109(3)(b)(I); 7 C.C.R. 1103-1(8.1).

190.    Because Olameter's failure to pay these overtime wages was willful, Olameter is also liable to McMurry and the other Piece Rate Workers for treble damages in the amount of three times their unpaid overtime wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(3)(b)(II).

191.    Finally, McMurry and the other Piece Rate Workers are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110; C.C.R. 1103-1(8.1).

## COUNT II

### FAILURE TO PAY MINIMUM WAGES UNDER THE CMWA AND COMPS ORDERS (COLORADO CLASS)

192.    McMurry incorporates all other paragraphs by reference.

193.    McMurry brings his CMWA minimum wages claim on behalf of himself and the other Piece Rate Workers pursuant to C.R.C.P. 23.

194.    Olameter's conduct violated the CMWA, as implemented by the COMPS Orders. *See* 7 CCR 1103-1(1.5).

195.    At all relevant times, Olameter was subject to the CMWA because Olameter was (and is) an "employer" within the meaning of the CMWA. *See* 7 CCR 1103-1(1.6).

196.    At all relevant times, Olameter employed McMurry and the other Piece Rate Workers as its covered "employees" within the meaning of the CMWA. *See* 7 CCR 1103-1(1.5 and 1.6).

197.    The CMWA and COMPS Orders require employers, like Olameter, to pay employees, including McMurry and the other Piece Rate Workers, no less than the minimum hourly wage for all hours worked, including overtime pay for hours worked in excess of 40 per workweek and 12 per day. *See* C.R.S. § 8-6-116; 7 C.C.R. 1103-1 (1.9 and 3).

198.    Olameter violated the CMWA and COMPS Order by failing to pay McMurry and the other Piece Rate Workers minimum wages for all hours worked, including hours worked "off the clock" for denied "meal breaks" and "rest breaks," which Olameter failed to compensate McMurry and the other Piece Rate Workers *at all* for these missed breaks. *See* 7 C.C.R. 1103-1(4.1.1, 1.8.2, and 5).

199.    Olameter's unlawful conduct harmed McMurry and the other Piece Rate Workers by depriving them of the minimum wages they are owed.

200.    Accordingly, McMurry and the other Piece Rate Workers are entitled to recover their unpaid minimum wages and interest. *See* C.R.S. § 8-6-118.

201.    Finally, McMurry and the other Piece Rate Workers are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-6-118.

## COUNT III

### FAILURE TO PAY EARNED WAGES UNDER THE CWCA AND COMPS ORDERS (COLORADO CLASS)

202.    McMurry incorporates all other paragraphs by reference.

203.    McMurry brings his CWCA earned wages claim on behalf of himself and the other Piece Rate Workers pursuant to C.R.C.P. 23.

204.    Olameter's conduct violates the CWCA. *See* C.R.S. §§ 8-4-101, *et seq.*

205.    At all relevant times, Olameter was subject to the CWCA because Olameter was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

206.    At all relevant times, Olameter employed McMurry and the other Piece Rate Workers as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

207.    The CWCA requires employers, like Olameter, to pay employees, including McMurry and the other Piece Rate Workers, all wages earned, due, and owing on their regular payday and following termination of their employment. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

208.    Olameter violated the CWCA by failing to pay McMurry and the other Piece Rate Workers all their wages earned for all the hours of work they performed for Olameter's benefit, including overtime wages calculated at the proper rate and hours worked "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket and for denied "meal breaks" and "rest breaks," which Olameter failed to compensate McMurry and the other Piece Rate Workers *at all* for these missed breaks. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1); 7 C.C.R. 1103-1(4.1.1, 1.8.2, and 5).

209.    Further, Olameter was obligated to pay overtime to McMurry and the Piece Rate Workers based on a calculation of all straight time pay divided by 40 hours per workweek because there was no "clear mutual understanding" that the straight time pay served as compensation for all hours worked, including hours worked "off the clock." *See* 7 C.C.R. 1103-1 (1.8.2).

210.    Olameter failed to utilize the correct regular rate calculation, which resulted in an underpayment of overtime pay to McMurry and the other Piece Rate Workers.

211.    Olameter's unlawful conduct harmed McMurry and the other Piece Rate Workers by depriving them of the earned wages they are owed.

212.    Accordingly, McMurry and the other Piece Rate Workers are entitled to recover their unpaid earned wages and an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or $1,000. *See* C.R.S. § 8-4-109(3).

213.    Because Olameter's failure to pay these earned wages was willful, Olameter is also liable to McMurry and the other Piece Rate Workers for treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(b)(II).

214.    Finally, McMurry and the other Piece Rate Workers are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110.

## COUNT IV

### CIVIL THEFT OF WAGES
### (COLORADO CLASS)

215.    McMurry incorporates all other paragraphs by reference.

216.    McMurry brings his civil theft claim on behalf of himself and the other Piece Rate Workers pursuant to C.R.C.P. 23.

217.    At all relevant times, Olameter was subject to the CWCA because Olameter was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

218.    At all relevant times, Olameter employed McMurry and the other Piece Rate Workers as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

219.    Olameter knew it failed to pay McMurry and the other Piece Rate Workers minimum wage and overtime because Olameter knew work they performed for Olameter's benefit "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket and during denied "meal breaks" and "rest breaks," and Olameter failed to compensate McMurry and the other Piece Rate Workers *at all* for these missed breaks.

220.    Olameter's knowing failure to pay minimum wage under the CMWA, constitutes theft pursuant to C.R.S. § 18-4-401. *See* C.R.S. § 18-6-116.

221.    As a result, Olameter's failure to pay minimum wage constitutes civil theft pursuant to C.R.S. § 18-4-405.

222.    Accordingly, McMurry and the other Piece Rate Workers are entitled to the greater of $200 or treble damages. *See* C.R.S. § 18-4-405.

223.    McMurry and the other Piece Rate Workers are also entitled to attorney's fees, costs, statutory interest, and all other relief deemed appropriate by the Court. *See* C.R.S. § 18-4-405.

## Count V[3]

### Failure to Pay Overtime Wages Under the DRMC
### (Denver Class)

224. McMurry incorporates all other paragraphs by reference.

225. McMurry brings his DRMC overtime claim on behalf of himself and the other Piece Rate Workers pursuant to C.R.C.P. 23.

226. Olameter's conduct violates the DRMC. *See* D.R.M.C., Chapter 58, Art I, *et seq*.

227. At all relevant times, Olameter was subject to the DRMC because Olameter was an "employer" within the meaning of the DRMC. *See* D.R.M.C., Chapter 58, Art. I, Div. 1, Sec. 58-1(6).

228. At all relevant times, Olameter employed McMurry and the other Piece Rate Workers as its covered "employees" within the meaning of the DRMC. *See* D.R.M.C., Chapter 58, Art. I, Div. 1, Sec. 58-1(11).

229. Specifically, McMurry and each Denver Class Member worked for Olameter within Denver's geographic boundaries. City and County of Denver Civil Wage Theft Rules 2024 (3.2).

230. Thus, McMurry and the other Denver Class Members are employees covered by the DRMC.

231. The DRMC requires employers, like Olameter, to pay non-exempt employees, including McMurry and the other Piece Rate Workers, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for all hours worked over 12 in a workday and 40 in a workweek. *See* D.R.M.C., Chapter 58, Art. I, Div. 2, Secs. 58-23.

232. McMurry and the other Piece Rate Workers are entitled to recover overtime pay under the DRMC. D.R.M.C., Chapter 58, Art. I, Div. 1, Secs. 58-6(a) and 58-24(a).

233. Olameter violated the DRMC by failing to pay McMurry and the other Piece Rate Workers overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration received—for all hours worked over 12 in a workday and 40 in a workweek, including hours worked "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket and during denied "meal breaks" and "rest breaks." D.R.M.C., Chapter 58, Art. I, Div. 1, Secs. 58-6(a)(2) & (4) and 58-24(a).

234. Further, Olameter was obligated to pay overtime to McMurry and the Piece Rate Workers based on a calculation of all straight time pay divided by 40 hours per workweek because there was no "clear mutual understanding" that the straight time pay served as compensation for all hours worked, including hours worked "off the clock." *See* 7 C.C.R. 1103-1 (1.8.2).

---

[3] McMurry and the Denver Class acknowledge that their claims for unpaid wages under the CWCA/CMWA and DRMC may be for the same, duplicative amounts and that they are only entitled to recover this amount once under either statute. However, the liquidated damages, penalties, and interest under the DRMC claims are not duplicative.

235.    Olameter failed to utilize the correct regular rate calculation, which resulted in an underpayment of overtime pay to McMurry and the other Piece Rate Workers.

236.    McMurry and the other Piece Rate Workers are entitled to recover any overtime wages unlawfully withheld, interest at a rate of 12 percent per annum from the date the overtime wages were first due, a penalty in the amount of $100 to each Denver Class member whose rights under the DRMC were violated for each day that the violation occurred or continued, and liquidated damages in an amount equal to three times the amount of unpaid overtime wages. D.R.M.C., Art. I, Div. 1, 58-6(a)(2) & (4).

237.    McMurry and the other Piece Rate Workers are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. D.R.M.C., Chapter 58, Art. I, Div. 1, Sec. 58-6(a)(6).

**C<small>OUNT</small> VI**

**F<small>AILURE TO</small> P<small>AY</small> M<small>INIMUM</small> W<small>AGES</small> U<small>NDER THE</small> DRMC
(D<small>ENVER</small> C<small>LASS</small>)**

238.    McMurry incorporates all other paragraphs by reference.

239.    McMurry brings his CMWA minimum wages claim on behalf of himself and the other Piece Rate Workers pursuant to C.R.C.P. 23.

240.    Olameter's conduct violates the DRMC. *See* D.R.M.C., Chapter 58, Art I, *et seq.*

241.    At all relevant times, Olameter was subject to the DRMC because Olameter was (and is) an "employer" within the meaning of the DRMC. *See* D.R.M.C., Chapter 58, Art I, Div. 1, Sec. 58-1(6).

242.    At all relevant times, Olameter employed McMurry and the other Piece Rate Workers as its covered "employees" within the meaning of the DRMC. *See* D.R.M.C., Chapter 58, Art I, Div. 1, Sec. 58-1(11).

243.    Specifically, McMurry and each Denver Class Member worked for Olameter within Denver's geographic boundaries. City and County of Denver Civil Wage Theft Rules 2024 (3.2).

244.    Thus, McMurry and the other Denver Class Members are employees covered by the DRMC.

245.    The DRMC requires employers, like Olameter, to pay employees, including McMurry and the other Piece Rate Workers, no less than the Denver minimum wage for all hours worked, including hours worked in excess of 40 per workweek and 12 per day. *See* D.R.M.C., Chapter 58, Art I, Div. 2, Sec. 58-15.

246.    Olameter violated the DRMC by failing to pay McMurry and the other Piece Rate Workers Denver minimum wages for all hours worked, including those worked "off the clock" and during on denied "meal breaks" and "rest breaks." *See* D.R.M.C., Chapter 58, Art. I, Div. 2, Sec. 58-15.

23

247.    Olameter's unlawful conduct harmed McMurry and the other Piece Rate Workers by depriving them of the Denver minimum wages they are owed.

248.    Accordingly, McMurry and the other Piece Rate Workers are entitled to recover their unpaid minimum wages, interest on the unpaid wages at a rate of 12 percent per annum from the date such wages were first due, a penalty in the amount of $100 to each worker whose rights under the DRMC were violated for each day that the violation occurred or continued, and liquidated damages in an amount equal to three times the amount of unpaid wages. D.R.M.C., Chapter 58, Art. I, Div. 1, Sec. 58-6(a).

249.    McMurry and the other Piece Rate Workers are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. D.R.M.C., Chapter 58, Art. I, Div. 1, Sec. 58-6(a)(6).

**COUNT VII**

**CIVIL THEFT OF WAGES**
**(DENVER CLASS)**

250.    McMurry incorporates all other paragraphs by reference.

251.    McMurry brings his civil theft claim on behalf of himself and the other Piece Rate Workers pursuant to C.R.C.P. 23.

252.    At all relevant times, Olameter was subject to the DRMC because Olameter was (and is) an "employer" within the meaning of the DRMC. *See* D.R.M.C., Chapter 58, Art I, Div. 1, Sec. 58-1(6).

253.    At all relevant times, Olameter employed McMurry and the other Piece Rate Workers as its covered "employees" within the meaning of the DRMC. *See* D.R.M.C., Chapter 58, Art. I, Div. 1, Sec. 58-1(5).

254.    Specifically, McMurry and each Denver Class Member worked for Olameter within Denver's geographic boundaries for at least 20% of their worktime in an established pay period and/or customarily spend at least 50% of their work time in Denver. City and County of Denver Civil Wage Theft Rules 2024 (3.3).

255.    Thus, McMurry and the other Denver Class Members are employees covered by the DRMC.

256.    Olameter violated the DRMC by failing to pay McMurry and the other Piece Rate Workers' wages and overtime wages for all hours worked, including those worked "off the clock" before clocking in at their first ticket and after clocking out at their last ticket and during on denied "meal breaks" and "rest breaks." *See* D.R.M.C., Chapter 58, Art. I, Div. 2, Sec. 58-15.

257.    Further, Olameter was obligated to pay overtime to McMurry and the Piece Rate Workers based on a calculation of all straight time pay divided by 40 hours per workweek because there was no "clear mutual understanding" that the straight time pay served as compensation for all hours worked, including hours worked "off the clock." *See* 7 C.C.R. 1103-1 (1.8.2).

258.    Olameter failed to utilize the correct regular rate calculation, which resulted in an underpayment of overtime pay to McMurry and the other Piece Rate Workers.

259.    Olameter's knowing failure to pay Denver minimum wages and overtime wages and under the CMWA and DRMC, respectively, constitutes theft pursuant to *See* C.R.S. § 18-4-401; D.R.M.C., Chapter 58, Art. I, Div. 3, Secs. 58-22 – 24.

260.    As a result, Olameter's failure to pay wage and Denver minimum wage constitutes civil theft pursuant to D.R.M.C., Chapter 58, Art. I, Div. 3, Secs. 58-24(a).

261.    Accordingly, McMurry and the other Piece Rate Workers are entitled to recover their unpaid minimum wages, interest on the unpaid wages at a rate of 12 percent per annum from the date such wages were first due, a penalty in the amount of $100 to each worker whose rights under the DRMC were violated for each day that the violation occurred or continued, and liquidated damages in an amount equal to three times the amount of unpaid wages. *See* D.R.M.C., Chapter 58, Art. I, Div. 1, Sec. 58-6(a).

262.    McMurry and the other Piece Rate Workers are also entitled to attorneys' fees, costs, statutory interest, and all other relief deemed appropriate by the Court. *See* D.R.M.C., Chapter 58, Art. I, Div. 1, Sec. 58-6(a)(4).

## JURY DEMAND

263.    McMurry demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, McMurry, individually and on behalf of the other Piece Rate Workers, seeks the following relief:

a.    An Order certifying Colorado Class and Denver Class and certifying this litigation as a class action pursuant to C.R.C.P. 23;

b.    An Order appointing McMurry and his counsel to represent the interests of the Piece Rate Workers;

c.    An Order authorizing prompt notice of this litigation to all Piece Rate Workers;

d.    An Order finding Olameter liable to McMurry and the other Piece Rate Workers for the unpaid overtime wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation of $1,000, plus treble damages in the amount of three times their unpaid wages or $3,000, whichever is greater;

e.    An Order finding Olameter liable to McMurry and the other Piece Rate Workers for their unpaid earned wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or $1,000, plus treble damages in the amount

of three times their unpaid earned wages or $3,000, whichever is greater;

f.      An Order finding Olameter liable to McMurry and the other Piece Rate Workers their unpaid minimum wages owed under the CMWA, plus interest;

g.      An Order finding Olameter liable to McMurry and the Denver Class for their unpaid Denver minimum wages, overtime wages, liquidated damages equal to three times the amount of unpaid wages and overtime wages, penalties in the amount of $100 per day to each worker whose rights under the DRMC were violated for each day such violation occurred or continued, interest at a rate of 12 percent per annum from the date such wages were first due, and any other relief owed under the DRMC.

h.      Judgment awarding McMurry and the other Piece Rate Workers all unpaid earned wages, unpaid minimum wages, unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the CWCA, CMWA, and DRMC;

i.      An Order awarding attorneys' fees, costs, and expenses;

j.      Pre- and post-judgment interest at the highest applicable rates; and

k.      Such other and further relief as may be necessary and appropriate.

Dated: April 3, 2024                     Respectfully submitted,

                                         **BRIAN D. GONZALES PLLC**

                                         By: */s/ Brian D. Gonzales*
                                                  Brian D. Gonzales
                                         2580 East Harmony Road, Suite 201
                                         Fort Collins, Colorado 80528
                                         Phone: (970) 214-0562
                                         bgonzales@coloradowagelaw.com

                                         Michael A. Josephson*
                                         Andrew W. Dunlap*
                                         **JOSEPHSON DUNLAP LLP**
                                         11 Greenway Plaza, Suite 3050
                                         Houston, Texas 77046
                                         Phone: (713) 352-1100
                                         Fax:     (713) 352-3300
                                         mjosephson@mybackwages.com
                                         adunlap@mybackwages.com

                                         Richard J. (Rex) Burch*
                                         **BRUCKNER BURCH PLLC**
                                         11 Greenway Plaza, Suite 3025
                                         Houston, Texas 77046
                                         Phone: (713) 877-8788
                                         Fax:     (713) 877-8065
                                         rburch@brucknerburch.com

                                         *Pro hac vice applications forthcoming*

                                         **ATTORNEYS FOR MCMURRY & THE PIECE RATE WORKERS**